And we'll hear the second case on the day calendar, Lanning v. City of Glens Falls and the County of Warren et al. Hold on a second, Mr. Gross. Yes, sir. Let's wait for counsel to depart. All right, Mr. Gross, let's begin. Thank you, Your Honor. Your Honor, I represent Plaintiff Appellant David Lanning in this appeal. David Lanning's detailed complaint alleged that David Lanning was the target of a campaign of harassment that involved the filing of false charges against him by his ex-wife's police officer boyfriend. We asked the court to review these allegations as a whole and to ask yourself what was really going on here in this case. We think by accepting these allegations as true and by drawing reasonable inferences from them, the picture as to what was really going on here becomes clear. Glens Falls policeman Ryan Ashe had a personal vendetta against David Lanning, and he enlisted his fellow officers and his former partner to assist him with this vendetta. In May 2012, Officer Ashe brought Jamie Lanning, the Plaintiff Appellant's ex-wife, to the Warren County Sheriff's Office and had her speak to his former partner, Investigator Conine. Jamie Lanning allegedly claimed that David Lanning had telephoned her and threatened her. The alleged call occurred at 7 p.m. on that evening. Ashe and Jamie Lanning complained about the call to Investigator Conine at midnight some five hours later. At 3 a.m., Conine went to David Lanning's residence, banged on his door without a warrant, rousted him out of bed, swore at him, swore at his mother, who was an elderly woman, 68 years old. So if all of those things are true, why isn't it the case with respect to Investigator Conine, who you're focused on now, why isn't it the case that he is entitled to qualified immunity? Your Honor, we don't believe obviously that Officer Conine was acting in good faith here. We think the records and the allegations support that Conine being a good friend of Officer Ashe and presumably knowing the situation between . . . Before you even get to qualified immunity, why isn't there a probable cause defense here? I think probable cause is probably the seminal issue here and the central issue. Well, you didn't argue qualified immunity, so I'm giving you an opportunity to argue on probable cause. I understand that, Judge. Thank you. Our position is that Officer Ashe was engaged in this campaign of harassment, that there was nothing true about what Officer Ashe was asserting, that he was doing this all as his personal vendetta against his girlfriend's ex-husband. With respect to Conine, that he was well aware that the complaint was a false complaint? We base that on the fact that he was close friends . . . Where do you allege that? It is alleged in the complaint, Your Honor. First of all, we allege that on paragraph 18 of the complaint, page 13 of the appendix, that Conine was Ashe's former partner and close friend? Sure. So friends of mine lie to me all the time. So where do you allege that he understood that Ashe lied to him and that this was a manufactured claim? I think what you have to do is look at the whole course of conduct here. So your answer is that there's not a specific allegation about that? Well, we allege that these claims were false. Right. But there's, as you know, case law, New York case law, that says that the mere fact that an allegation, for example, of domestic violence is false, doesn't eliminate the probable cause for a police officer to act on the claim or act on the complaint. Certainly, though, a police officer who was provided with false information and knows that information to be false . . . But you . . . I think you are acknowledging that you have not alleged, the complaint doesn't allege, that he knew that the information was false. I don't know if I can point to a specific . . . So let me turn to your class of one equal protection claim. Is that the right way to describe it? I'm sorry, the equal protection claim? The equal protection claim. I mean, you're claiming class of one protection, right? Yes. Have we not, in our own case law, required a very high degree of similarity between the plaintiff and others? I believe you have, Your Honor. And where in your complaint do you allege or point out people who are similarly situated, with a high degree of similarity that we've required, but were not treated in the same way as comparatives? Well, Your Honor, it's our position that . . . No, no, no. My question is, where do you allege that? Very simple question. I don't know that there's a specific allegation in that regard. So, in connection with the class of one claim, where we've required the plaintiff, in the context of a complaint, to show an extremely high degree of similarity between themselves and the persons to whom they compare themselves, there's no specific complaint or allegation? There is none, Your Honor. Returning to probable cause, Your Honor. Mr. Conine's office and had Mr. Lanning, Mr. Conine, go and arrest Mr. Lanning in his room. And the way he was arrested, he was marched out of his room in his underwear, taken to court in his underwear, manhandled, swore at, and this was just the first instance. There was a second instance in September where, based on almost nothing, Mr. Lanning was again arrested, charged with violating an order of protection for staring from his car. He was given three traffic tickets. Several months later, same officer, Ash, once again arrested Mr. Lanning, charged him with three different traffic violations. None of these charges were ever sustained. All of them were dismissed. All of them were either initiated or commenced or completed by Officer Ash. And I think if the court looks at the entire situation here, it becomes clear that what was going on here was that Officer Ash was making things up about Mr. Lanning to try to punish him, arresting him at every turn. All of these charges were dismissed. And if we look back at what happened with Officer Conine and each of these arrests in the total context of what happened to Lanning, it becomes clear that they never had probable cause and that this case should be allowed to continue. Well, you do make an allegation with respect to Officer Ash that he was aware that these claims were false and part of a vendetta. Yes, Your Honor. And I think it can be, for purposes of pleading, one can draw from these facts the reasonable inference that Officer Conine knew what was going on here in the beginning when he arrested Ash or Lanning, in the way that he arrested him, in the manner in which he went at 3 o'clock in the morning without a warrant, banged on the door, pulled him out of bed, never went back and investigated these matters, never went back and corrected these matters. Would you remind me, with respect to the Ash-related arrests, was that September? Yes, Your Honor. Was the only basis for the district court's dismissal of that part of the claim the fact that it was not a favorable termination? Or was there another basis? I think she started with probable cause and basically her whole decision begins with . . . Even on the Ash arrest? Yes, Your Honor. Thank you. You've reserved some time. Thank you, Your Honor. We'll hear from Mr. Rizzillo. Thank you. Mr. Rizzillo, just a clerical concern. Are you a member of Carter Convoy? Yes, I am. And I represent Glens Falls and Officer Ash on this appeal. The first cause of action as it pertains to Officer Ash was dismissed because there was no personal involvement alleged in the arrest or the prosecution. All he did was drive her, Mrs. Lanning, to the police station to give a report. Right. And so we can . . . I don't believe there's any dispute in the pleading about that. And we, of course, agree with the court's decision as it pertains to probable cause. With respect to the second cause of action, other arguments were indeed made in support of the motion to dismiss. The judge went with the argument that this was not a dismissal in the favorable determination. That was the only basis that the district court . . . Correct. That's the only basis that she went with. She didn't discuss any of the other arguments that we made. And we believe it is supported by the case law that it's an interest of justice dismissal. By which case law? There's the High v. Jacobs. It talks about if a dismissal is in the interest of justice, it is not one which can be deemed a favorable termination. And looking into the . . . Why hasn't that been abrogated? That's a Second Circuit case . . . Right. . . . on which we've relied. But why hasn't that line been abrogated by the decisions of the . . . subsequent decisions of the New York Court of Appeals? Well, I believe if you . . . I can't say why that has not happened. Well, why is . . . maybe the wrong . . . Hasn't it been abrogated by Cantolino and by Smith-Hunter? I believe that those cases say you look at the facts behind it, behind the nature of the dismissal. And I believe the judge's written decision, the transcript of the decision, makes it clear that he was making no finding of guilt or innocence. And wanted to make it specifically clear that he was not making such a finding, leaving the question of guilt or innocence unanswered. So what I draw, but maybe I'm wrong and maybe you can correct me, from reading Cantolino, which was well after the High case, and Smith-Hunter and a few other New York cases, is that the rule is that a plaintiff doesn't really need to show or affirmatively indicate innocence. And that you assume that it is a favorable termination if the disposition is not clearly inconsistent with innocence. Is that the same lesson that you draw from those cases? Yes, but I would point out the judge's decision, specifically saying I'm not making a decision of guilt or innocence here, and the nature of the dismissal . . . It's . . . As opposed to consistent with innocence. Well, I believe if you look at the fact that there also was an indictment in this case . . . No, no, no, no, no. We're talking about the disposition. The disposition was . . . How is that, the words that you use, that you say that the state court judge used, to dispose of the case, how is that inconsistent with innocence? I believe it's neither consistent or inconsistent. It's not inconsistent. Right. Right. So, if that's true, then what do you make of Judge Kaye's decision in Cantolino, in which he says, or in which the New York Court of Appeals says, that it's got to be inconsistent with innocence in order for it to be deemed an unfavorable termination? Well, I believe that if you look at the entirety of the judge's decision, coupled with the fact that we do have an indictment . . . So, point me to the rest of the decision that would disabuse me of what I just said about the holding. With respect to the city court decision, I don't believe I can point to anything in particular about that ruling. But he did say that he felt it would be unfair to allow a conviction. Forget about unfairness. Forget about everything else. The New York Court of Appeals tells us to look at whether the disposition would be inconsistent with termination. And what you just said is that there is nothing about the trial judge's disposition that's inconsistent with innocence. And my question to you is, why isn't that the end of the story? Why shouldn't we vacate just on that basis? Well, I believe there's more to the arguments that were made before the court below as well. I understand the judge did not rule on those. But I believe the arguments are that this matter was supported by probable cause. There was an indictment. For those reasons, this case should . . . On probable cause, let me just ask you one or two questions. Right. Why drawing every inference in favor of Mr. Lanning in his complaint, why is there probable cause with respect to that second arrest? Where I think that the allegation is that Mr. Ashe, that there's any reading of this, any reasonable reading of the complaint, would lead one to conclude that there's a vendetta against a former or an ex-husband. I'm not saying that that's true or false, but that's a reasonable way to read the complaint. How do we draw from all of those allegations that there was probable cause for Mr. Ashe to arrest? Mr. Ashe did not arrest the plaintiff. In the second arrest? Correct. What happened? He was in plain clothes. He was in his own personal vehicle. He is personally involved in the arrest? He was not personally with the police that performed the arrest. He was present outside that night, and an arrest did occur by the Glens Falls Police, but the ones that arrested him are not defendants in this case. All right. Mr. Johnson has some time, and we'll hear from him. Thank you. Thank you. Good morning. May it please the Court, Greg Johnson on behalf of Warren County and Deputy Conine. I just would like to remind the Court, obviously, there are two sets of defendants here, and even as we look at the pleadings in this case, it's very clear that neither Warren County, the Warren County Sheriff's Office, or Officer Conine had any involvement whatsoever in the subsequent, the second arrest, as has been referred to in September, or the traffic tickets. So with respect to my clients, the focus, of course, is on the probable cause analysis at the time of the arrest on May 24 and 2012. And fundamentally, I think the appellant's failing is the failing to recognize the precedent between establishing that the probable cause analysis in cases like this is an objective one and not a subjective one. It seems to me that plaintiff fails to recognize that you can have a legitimate arrest and criminal activity and probable cause and still have personal motives. Innocent people, people who are not perfectly innocent, sometimes are victims of crimes. And so likewise, if you flip flop this, and a particular officer who makes this arrest engaged in the most earnest and dispassionate analysis of probable cause, but they were dead wrong and did so in violation of clearly established law, that wouldn't, of course, be a defense. So likewise, all of these arguments that plaintiff has fashioned in page 13, 14, and 15 of his brief, that Conine's probable cause analysis was done in bad faith, that he was motivated to pretend that probable cause existed, that he was not dispassionate in effectuating the arrest, all of those arguments disregard the well-settled precedent that this is an objective determination. And when we look at the objective facts, even those facts contained in the four corners of his complaint, it's clear that Judge D'Agostino below was correct that there existed probable cause and a reasonable officer in Officer Conine's position would have reasonably come to that conclusion. And just to review very quickly, it is affirmatively alleged that prior to the May 24 arrest, that there was a contentious relationship between the plaintiff and his estranged wife. It is affirmatively alleged by the plaintiff that there was a report of a death threat. This is not penny theft, a death threat. It is affirmatively alleged that before the arrest, my client established and violated by any such threat, and before the arrest, my client took a sworn statement under oath from the victim. Those circumstances clearly established probable cause to effectuate that arrest. In the reply brief, plaintiffs suggest that this distinction between objective and subjective analysis is somehow irrelevant. And of course, I respectfully submit that that's just simply dead wrong, that the probable cause analysis is a legal determination that turns on the facts contained in the complaint and not an inquiry of Conine's bias or his personal agenda, assuming arguendo that he had one. With respect to the equal protection claim, I think it's one page of argument is offered without any authority. I think plaintiff at this point has effectively acknowledged that he has failed to There's no comparative group identified, there's no active selective treatment specifically alleged, and there's no allegations that point to an impermissible motive. While Judge D'Agostino did not dispose of the equal protection claim on the basis of statute of limitations, I also would like to point out that that, of course, would be barred by the statute of limitations. When you look at the four corners of this complaint, there is no allegations of any conduct by Officer Conine or anyone at Warren County that occurred within the statute of limitations period. This case is filed on February 4th, 2016, and there's nothing alleged that my clients did or failed to do after February 4th, 2013. So I see my time is up, unless the court has questions for me, I thank you for your time. Thank you. Mr. Gross? I just wanted to address your Honor's question about the second arrest in September. Wasn't he involved? Didn't he make a report? Didn't he tell his fellow officers that Mr. Lanning had done something? I thought he was involved, but you're- Well, the allegation is that Mr. Lanning, and this is on page 18 of the appendix, starting with paragraph 68, that Mr. Lanning went to pick up his daughter when he went back to drop off his daughter at the grandmother's house. He noticed an unmarked police cruiser. He also noticed that Jamie Lanning and Ryan Ash, the officer, were sitting in Ash's vehicle across the street from the point of drop off. And that Ash was dressed in plain clothes and was in the driver's seat. That Mr. Lanning parked his car and told his daughter that something bad was about to happen. And that immediately thereafter, five police officers converged upon Mr. Lanning and arrested him, pushing him up against the vehicle, placing him in double handcuffs, screaming at him and manhandling him. And that he was then placed under arrest for a violation of the order of protection that had previously been issued. So it's clear that Mr. Ash was well involved with this incident. He was present and it doesn't appear to be a coincidence that the Glens Falls, his fellow police officers, were also present at that time. And it should be noted too that one of the arresting officers mentioned at the time of this arrest that referencing letters that Mr. Lanning had previously sent to the Glens Falls police complaining about the way he was being treated. One of those officers at the time of the September arrest turned to Mr. Lanning and said, we're all aware of your letters to the chief, maybe this will slow you down. And so it's clear that Officer Ash and the Glens Falls Police Department were working together in violating Mr. Lanning's civil rights. And as to that arrest, that is where your adversary says that the district court dismissed the claim only on grounds of failure to show a favorable termination. I apologize, Judge, I'd have to look at the decision again, but I'll accept that as the case. Thank you, Mr. Gross. Thank you. We'll reserve decision.